# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00703-CV

**Texas Alcoholic Beverage Commission, Appellant**

**v.**

**American Legion Knebel Post 82, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## NO. D-1-GN-10-003084, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Alcoholic Beverage Commission (TABC) appeals from a summary judgment in favor of American Legion Knebel Post 82 in a declaratory-judgment action brought under section 2001.038 of the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.038 (waiving sovereign immunity for suits seeking declaration regarding "validity or applicability" of administrative rule). The Post brought the underlying action in response to a TABC raid and administrative charges made in connection with a fund-raising activity at the Post that the TABC contends violated a regulatory prohibition against gambling in a TABC-licensed facility. *See* 16 Tex. Admin. Code § 35.31. The district court, after partially denying TABC's plea to the jurisdiction, granted summary judgment declaring that the Post's fund-raising event is not illegal gambling and is not subject to TABC rule 35.31. For the reasons set forth below, we will affirm the district court's partial denial of TABC's plea to the jurisdiction, but reverse the district court's summary judgment.

**Background**

The Post is one of approximately 15,000 worldwide posts of the American Legion—a "patriotic veterans organization" created by Congress in 1919 that is composed of former members of the military. *See* Law of Sept. 16, 1919, ch. 59, § 1, 41 Stat. 284 (now codified at 36 U.S.C. § 21702). The Post, which is located in south Austin, holds meetings, hosts community-service projects, and offers numerous benefits to its members, including access to a bar at its premises for which it holds two TABC licenses.

Sometime around 2009, the Post decided to host a fund-raising event at its location called the "Support a Veteran Sweepstakes." As described by the Post, its Sweepstakes is similar to more well-known sweepstakes run by large companies—e.g., McDonald's, Subway, Budweiser, Coors, and Miller—where winners are revealed by manual drawing from entries such as a pull tab, a scratch-off tab, or information contained on the inside of a bottle cap. And like these well-known sweepstakes, the Post asserts, no purchase is necessary to play its Sweepstakes—anyone seeking to participate can simply ask for a free entry in person or by mail—although people may also obtain entries by making a donation or a purchase. But unlike the more well-known sweepstakes, the Post explains, its Sweepstakes uses an electronic gaming device, equipped with a video display, that is programmed to draw entries from a predetermined pool and then "open" those entries on the video screen to reveal—in the form of a video game—whether the entrant is a winner.

Having decided to hold the Sweepstakes at its place of business, but wanting to avoid any potential legal problems regarding its TABC licenses, the Post asked TABC for "premarket approval" of the Sweepstakes—i.e., a declaration that the Sweepstakes, as presented to TABC before its implementation, would not violate any TABC regulations. In response to this request, TABC's

2

Supervisor of Marketing Practices sent a letter expressing his view that the Sweepstakes, if operated in the manner described, "is permissible for Texas." Relying on this opinion, the Post implemented the Sweepstakes at its post location.

During early 2010, while the Post was operating the Sweepstakes, TABC began an investigation into the Post's Sweepstakes after TABC received complaints, including those from a former Post bartender, that the Post was conducting illegal gambling operations on its premises. Ultimately, TABC obtained a search warrant, conducted a raid on the Post's premises, seized the video Sweepstakes gaming devices, and asserted administrative charges against the Post. The Travis County Attorney filed criminal charges against the Post's officers in connection with the same raid. TABC eventually dropped the administrative charges against the Post in exchange for payment of $1,500 from the Post as a fine for failure to adequately supervise its employees. The Travis County Attorney's office likewise later dismissed the criminal charges related to the Sweepstakes.

In response to the raid and imposition of administrative charges, but before TABC and the county attorney had dismissed their respective charges, the Post brought this declaratory-judgment action against the TABC in Travis County District Court seeking multiple declarations, including that its Sweepstakes is not illegal gambling and that TABC rule 35.31(c)(14), which generally prohibits illegal gambling in a TABC-licensed facility, does not apply to the Post's Sweepstakes. *See* Tex. Gov't Code § 2001.038(a)–(b) (giving Travis County district courts jurisdiction to determine "the validity or applicability" of an agency rule). TABC, in turn, filed a plea to the jurisdiction contesting the district court's subject-matter jurisdiction over the Post's claims, and the Post later filed a motion for summary judgment.

After a hearing, the district court granted in part and denied in part TABC's plea to the jurisdiction, leaving in place the request for declarations that the Sweepstakes is not illegal gambling and rule 35.31 does not apply to the Sweepstakes. At that same hearing, the district court also considered and granted the Post's motion for summary judgment, declaring that the Sweepstakes, "as presented in the summary judgment evidence in the record in this case, is not gambling, provided that it is conducted in accordance with that evidence." It is from this judgment that TABC appeals.

## Discussion

TABC raises two issues on appeal. The first questions whether the district court had jurisdiction over the Post's claims and, thus, erred in denying TABC's plea to the jurisdiction in part. The second challenges the district court's decision to grant the Post's motion for summary judgment.

### Jurisdiction

We begin, as we must, with TABC's challenge to the district court's decision to deny its plea to the jurisdiction. A plea to the jurisdiction is among the procedural mechanisms through which a party may challenge a trial court's authority to decide the subject matter of a specific cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). To determine whether this authority exists, we begin with the contents of the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that would affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe pleadings liberally in favor of jurisdiction, taking them as true in the first instance, and look to the pleader's intent. *Miranda*,

4

133 S.W.3d at 226. Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 226. That is a question of law that we review de novo. *See id.*

We agree with the Post that the district court has jurisdiction over the Post's request for declaratory relief under APA section 2001.038. Section 2001.038 is an original grant of jurisdiction that waives sovereign immunity to the extent of creating a cause of action for declaratory relief regarding the "validity" or "applicability" of a "rule" if "it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a); *see Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.) (holding that "section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity"). The Post's petition to the district court requested relief under this APA provision, specifically asking the district court to declare that TABC rule 35.31 does not apply to the Post's Sweepstakes program.

TABC rule 35.31 prohibits TABC licensees, like the Post, from conducting or allowing illegal gambling at licensed premises:

(b)     A licensee or permittee violates the provisions of the Alcoholic Beverage Code . . . if any of the offenses listed in paragraph (c) of this rule are committed:
  (1)     by the licensee or permittee in the course of conducting his/her alcoholic beverage business; or
  (2)     by any person on the licensee or permittee's licensed premises, and
  (3)     the licensee or permittee knew or, in the exercise of reasonable care, should have known of the offense or the likelihood of its occurrence and failed to take reasonable steps to prevent the offense.
(c)     The offenses that are the subject of this rule are as follows:

. . . .

> (14)  any gambling offenses described in Chapter 47 of the Texas Penal Code.

16 Tex. Admin. Code § 35.31(b)–(c). Chapter 47 of the Texas Penal Code, in turn, makes it a criminal offense to "play[] and bet[] for money or other thing of value at any game played with . . . [a] gambling device." Tex. Penal Code § 47.02(a)(3). A "gambling device" under the Penal Code is—

> any electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the price is automatically paid by the contrivance.

*Id.* § 47.01(4) (chapter 41 definitions). Thus, the three elements of the offense of illegal gambling under Penal Code section 47.02(a)(3) are (1) paying consideration for (2) the chance to win (3) a prize or prizes, including money. *See id.* §§ 47.01(4), .02(a)(3); *see also Brice v. State*, 242 S.W.2d 433, 434 (Tex. Crim. App. 1951) (listing elements for offense of gambling).

The Post's petition asserted that its Sweepstakes is not illegal gambling under the Penal Code, and thus not subject to rule 35.31's prohibition, because it lacks the element of consideration. In support of that contention, the Post's petition alleged that the Sweepstakes does not require participants to pay consideration in order to play. Specifically, the Post asserted facts showing that participants may obtain Sweepstakes entries by (1) making a donation, (2) purchasing an item, or (3) asking for an entry in person or by mail. If participants are not *required* to pay to play, the Post's petition urges, the Sweepstakes lacks consideration as a matter of law and, therefore, is not illegal gambling under the Penal Code and, by extension, not a violation of TABC rule 35.31.

6

Finally, the Post's petition alleged facts regarding TABC's threatened application of this rule, *see* Tex. Gov't Code § 2001.038: TABC had applied rule 35.31 to the Post's Sweepstakes in the past; TABC's position is that the Sweepstakes is gambling; TABC regards the "premarket approval" as having no precedential value; and TABC intended to invoke that rule again against the Post in the future. In sum, and construing its petition liberally as we must, *see Miranda*, 133 S.W.3d at 226, the Post has asked the district court to determine the applicability of a TABC rule that it contends TABC threatened to use against the Post's Sweepstakes. This is the exact situation for which APA section 2001.038 grants jurisdiction. *See* Tex. Gov't Code § 2001.038.

TABC argues that any real controversy that existed when the Post filed its petition with the district court was subsequently mooted when TABC dropped its administrative charges against the Post. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome."); *see also Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010) (subject-matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable). "Mootness" is, as TABC suggests, an aspect of justiciability, which requires a real controversy between the parties that will actually be resolved by the judicial relief sought. *See Hallman*, 159 S.W.3d at 642 (citing *The State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994)). TABC challenges whether the Post could present a live controversy for the district court to resolve once the TABC dismissed the administrative charges against the Post. But TABC's argument here incorrectly assumes that TABC's imposition of administrative charges was the only issue raised by the Post's suit when, in fact, the real controversy was whether TABC rule 35.31 applied to the Post's Sweepstakes. That controversy was

7

not resolved when TABC withdrew its claims without any prejudice to reasserting them in the future. Further, the fact that TABC is free to reassert the illegal-gambling charges against the Post's Sweepstakes absent the declaration that the Post sought below highlights that a controversy regarding Rule 35.31's applicability still exists. *See Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.) (noting that declaratory judgment action is not moot when party voluntarily abandons conduct at issue without binding admission or extrajudicial action that would prevent recurrence of challenged action).

Relatedly, TABC argues that the Post's suit is not ripe for adjudication because the Post has failed to present evidence showing that "it suffers an imminent threat" from TABC enforcement of Rule 35.31. *See City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied) (ripeness implicates subject-matter jurisdiction and requires concrete injury to present justiciable claim) (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000)); *see also Travelers*, 315 S.W.3d at 865 (noting that ripeness is, like mootness, an aspect of justiciability). "Ripeness," of course, addresses whether the facts have sufficiently developed to show that an injury has occurred, or is likely to occur. *City of Waco*, 83 S.W.3d at 175 (citing *Patterson v. Planned Parenthood of Houston & Se. Texas, Inc.*, 971 S.W.2d 439, 442 (Tex.1998)).

Here, it is undisputed that TABC has already taken a stance adverse to that of the Post's by instituting an enforcement action based on its contention that the Sweepstakes program is illegal gambling that violates TABC rule 35.31. And even though it has since withdrawn its enforcement action, it did so without any prejudice to reasserting it. Given that the Sweepstakes is ongoing, the Post still faces the likely possibility of future enforcement actions by TABC. Further,

8

the Post has alleged various facts in its petition that, if construed liberally, suggest that TABC considers the Post's Sweepstakes, and other similar programs, to be illegal gambling, and that it also gives no value to the "premarket approval" letter. Accordingly, the Post's cause here is sufficiently ripe for a declaration under section 2001.038 regarding whether the Sweepstakes is illegal gambling.

In a third justiciability-related argument, TABC contends that the district court's judgment was an improper advisory opinion because it contained "conditions" and "caveats." Specifically, TABC insists that the district court's declaration that the Sweepstakes program is not gambling is merely a "conditional presumption of legitimacy" given certain language in its summary judgment:

> 2. The Court finds that the Post 8[2] game . . . using the WTGI software program as presented in the summary judgment evidence in the record in this case, is not gambling, **provided that** it is conducted in accordance with that evidence." In specific, the Court finds that the Post 8[2] game has **and must maintain** the following characteristics in order to avoid running afoul of Rule 35.31(b): . . . .

> 3. The Court further finds, however, that the fact that the [Sweepstakes] is not *per se* gambling does not mean that it could not be implemented in a manner that might render it gambling.

(Bold emphases added.) We disagree that this language makes the judgment advisory.

An advisory opinion decides an abstract question of law without binding the parties. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444. The question before the district court here—i.e., whether rule 35.31 applies to the Post's Sweepstakes—presented a specific and concrete question of law. Further, the district court's determination that the Post's Sweepstakes, as described in the Post's summary-judgment evidence, is not illegal gambling is binding on both parties. For example, the declaration requires the Post to operate the Sweepstakes as established by the summary-judgment

9

evidence or risk the imposition of future rule 35.31 administrative charges. Likewise, the judgment prevents the TABC from successfully imposing administrative charges on the Post for illegal gambling related to the Sweepstakes, but only to the extent that the Post operates the Sweepstakes in the manner established by the summary-judgment evidence. As a result, the district court's determination resolves an ongoing controversy between the Post and TABC.

We also note our disagreement with TABC's characterization of the district court's judgment as being conditional. The court's use of the phrases highlighted above—i.e., "provided that," "and must maintain," and "not *per se*[1] gambling"—is simply meant to clarify the fact that the court's declaration is limited to a Sweepstakes operated in the manner established by the summary-judgment evidence and to acknowledge that, should the Post operate the Sweepstakes in a different manner, the regulation may apply—i.e., the district court's summary judgment applies only to the Sweepstakes run in the manner described by the summary-judgment evidence. And, in fact, this is precisely what TRCP rule 166a requires a trial court to do when rendering summary judgment. *See* Tex. R. Civ. P. 166a(c) (requiring summary judgment be determined on issues expressly set out in motion). But more important, the district court's judgment here clearly declares that the Post's Sweepstakes, again as established by the summary-judgment evidence, is not illegal gambling under TABC rule 35.31(b). The summary judgment is not conditioned on some future event.

In a final jurisdictional argument, TABC argues that the district court lacked jurisdiction over the Post's declaratory-judgment claim to the extent that claim required the district court to interpret a criminal statute—i.e., Penal Code chapter 47. Only where a plaintiff can

---

[1] "Per se" means "[o]f, in, or by itself; standing alone, without reference to additional facts." *Black's Law Dictionary* 1257 (9th ed. 2009).

show "irreparable injury to . . . vested property rights," TABC argues, may a civil court, such as the district court here, construe a criminal statute. TABC relies here on the Texas Supreme Court's pronouncement in *State v. Morales* that "[a] civil court simply has no jurisdiction to render naked declarations of 'rights, status, or other legal relationships arising under a penal statute.'"[2] 869 S.W.2d 941, 947 (Tex. 1994) (quoting *Malone v. City of Houston*, 278 S.W.2d 204, 206 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.)). But TABC's reliance on *Morales* is misplaced.

Initially, we note that the Post is not seeking a declaration of "rights, status, or other legal relationship" arising under a criminal statute; rather, it seeks a declaration regarding the applicability of an administrative regulation that incorporates provisions of the Penal Code. So to that extent, *Morales* is not implicated here. But the differences go deeper. *Morales* involved a civil suit seeking to declare Texas's sodomy law unconstitutional and to enjoin criminal prosecution under that statute. *See Morales*, 869 S.W.2d at 943. Its entire analysis, and in fact its ultimate holding, was thus carefully limited to whether a court exercising civil jurisdiction could declare a criminal statute unconstitutional or enjoin its prosecution. *Id*. Here, the Post does not seek to declare Penal Code chapter 47, or any of its provisions, unconstitutional or, strictly speaking, to

---

[2] The district courts of Travis County—including those that give preference to criminal matters and those that, like the district court in this case, focus on civil matters—are courts of general jurisdiction under the Texas Constitution. *See* Tex. Const. art. V, § 8. As such, all Travis County district courts may hear and determine both civil and criminal matters and, thus, are both civil and criminal courts. But this does not ultimately inform our decision because, despite *Morales*'s reference to "civil courts," a close reading of that decision and others addressing the same topic shows that the principle addressed here refers to Texas courts exercising their civil jurisdiction. *See, e.g.*, *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 441 (Tex. 1994) (noting that, "as a rule, a party cannot seek to construe or enjoin enforcement of a criminal statute in a civil proceeding"); *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 64 (Tex. 1969) ("It has been said that the power and authority to interpret criminal statutes rests solely with the courts of this state exercising criminal jurisdiction."). The district court here was unquestionably exercising its civil jurisdiction.

enjoin its enforcement. Instead, the Post seeks a declaration regarding whether an administrative regulation, which prohibits TABC licensees from engaging in conduct that is defined as being illegal under the Penal Code, applies to its Sweepstakes program. As such, *Morales* does not and cannot inform our decision here.

Importantly, as suggested above, the *Morales* decision carefully distinguishes civil suits that "seek a naked declaration of the penal statute's unconstitutionality" from those cases where "relief was sought solely to 'prevent administrative enforcement of an administrative regulation adopted for the purpose of implementing the statute.'" *See Morales*, 869 S.W.2d at 945–46 (distinguishing facts of and quoting *Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 62 (Tex. 1967)). Under the circumstances presented in *Passel*, the *Morales* decision noted, injunctive relief might be granted because a complaint about an administrative rule is "a matter within the court's equity jurisdiction." *Id.* at 946 (citing *Passel*, 440 S.W.2d at 64). In *Passel*, the supreme court ultimately held that a district court exercising its civil jurisdiction in an administrative appeal could determine the meaning and validity of a Penal Code provision where no prosecution had been instituted and where no injunction against the provision's enforcement was sought. *See Passel*, 440 S.W.2d at 64. This is similar, although not identical, to the Post's case, which seeks a declaration under APA section 2001.038 regarding the applicability—not enforcement—of a TABC regulation that incorporates—but does not implement—a Penal Code provision. Regardless, the bottom line here is that despite TABC's jurisdictional argument to the contrary, *Morales* does not create an absolute bar to the construction of a criminal statute by a court exercising its civil jurisdiction. This is perhaps best illustrated by the fact that the Texas Supreme Court has interpreted and construed Penal Code provisions, including the very provision at issue here, when those

12

provisions are incorporated into or implicated by civil statutes or regulations. *See, e.g.*, *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013) (in civil forfeiture case, interpreting Penal Code definitions and holding that particular gaming device did not fall under Penal Code exclusion); *In re B.W.*, 313 S.W.3d 818, 826 (Tex. 2010) (determining that child under fourteen may not be prosecuted for prostitution under Penal Code section 43.02). Accordingly, the district court has jurisdiction over the Post's claims regarding TABC rule 35.31.

We overrule TABC's first issue.

**Summary judgment**

Having determined that the district court had jurisdiction over the Post's declaratory-judgment action, we turn to TABC's multiple challenges to the district court's decision to grant the Post's motion for summary judgment. Our de novo standard for reviewing summary judgments is well-known. *See, e.g.*, *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 214 (Tex. 2003); *Nixon v. Mr. Property Mgmt. Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We must determine whether there is more than a scintilla of probative evidence raising genuine issues of material fact. *See* Tex. R. Civ. P. 166a(c), (i). We must review the record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

As discussed in more detail above, the applicable law in this case, TABC rule 35.31, prohibits TABC licensees from conducting any of the gambling offenses found in chapter 47 of the Penal Code. *See* 16 Tex. Admin. Code § 35.31(c)(14). The Post moved for summary judgment based on its contention that the Sweepstakes is not illegal gambling as a matter of law because it

13

lacks the element of consideration that is necessary to constitute the offense of illegal gambling under chapter 47 and Texas case law. *See* Tex. Penal Code §§ 47.01(4) (defining gambling device as requiring consideration), .02(a)(3) (making it an offense to "play[] and bet[] for money . . . any game played with . . . a gambling device"); *Brice*, 242 S.W.2d at 434 (describing elements of offense of illegal gambling, including element of consideration). Specifically, the Post argued that its Sweepstakes lacks consideration because it provides a legitimate opportunity to obtain an entry to play without requiring a donation or purchase. *See Brice*, 242 S.W.2d at 434 (holding that offense of illegal gambling requires "the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating"). And to support this contention, the Post presented summary-judgment evidence showing—conclusively the Post contends—that while some people may choose to make a donation or purchase a drink special to obtain entries, free entries are available to anyone who requests them in person or by mail—i.e., no purchase is necessary to participate in the Post's Sweepstakes.

Assuming without addressing or deciding whether the availability of free entries eliminates the element of consideration, we agree with TABC that the Post's summary-judgment evidence raises a question of fact on this issue. The Post's summary-judgment evidence includes a document titled "Affidavit For Search and Seizure Warrant." This warrant, which was created by TABC in advance of its raid on the Post's premises, contains the testimony of a TABC agent regarding TABC's probable cause to search the Post's premises and seize the Sweepstakes machines. Specifically, the agent testifies in the warrant that a former Post bartender stated that "to use the [Sweepstakes] machines a card *must* be received from the bartender and that you *must put money* on the card to play." (Emphases added.) Taking this as true, indulging every reasonable inference, and

14

resolving any doubts in favor of non-movant TABC, *see City of Keller*, 168 S.W.3d at 824, this warrant creates a question of fact regarding whether someone can play the Sweepstakes for free or whether payment is required. The existence of a fact issue precludes summary judgment. *See* Tex. R. Civ. P. 166a(c). Accordingly, we sustain TABC's second issue.

## Conclusion

We affirm the district court's partial denial of TABC's plea to the jurisdiction, but having determined that the summary-judgment evidence raises a fact question that precludes summary judgment, we reverse the district court's summary judgment and remand the case for further proceedings.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed in part; Reversed and Remanded in part

Filed: May 16, 2014

15